UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JERMAINE LOCKHART,

        Plaintiff,

v.                                                                                                                Case No. 23-cv-1243-bhl

MEGAN LEBERAK, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Jermaine Lockhart, who is representing himself, is proceeding on an Eighth Amendment claim against Defendants Dr. Sara English and Nurse Megan Leberak in connection with allegations that they denied proper medical care following Lockhart's ingestion of another inmate's medication on May 14, 2023 at the Waupun Correctional Institution. Dkt. Nos. 1, 11, & 29. On July 31, 2024, Defendants filed a motion for summary judgment. Dkt. No. 31. Because no reasonable jury could conclude that Defendants were deliberately indifferent towards Lockhart's medical needs, the Court will grant the motion for summary judgment and dismiss this case.[1]

## UNDISPUTED FACTS

At the relevant time, Lockhart was an inmate at the Waupun Correctional Institution, where English was a doctor and Leberak was a nurse. Dkt. No 33, ¶¶1-3. On May 14, 2023, at around 3:00 p.m., Correctional Officer Brian Beilke (not a defendant) accidently gave Lockhart another inmate's medication. *Id*., ¶¶41 & 42; *see* Dkt. No. 39 at 7:10–9:25. Lockhart was supposed to

---

[1] About three months later, on September 12, 2024, Lockhart filed a motion for sanctions and a motion to strike. Dkt. No. 46. The Court will also deny the motion for sanctions and to strike for the reasons provided below.

receive Salsalate (an anti-inflammatory drug), but he instead received 400mg Ibuprofen (a different type of anti-inflammatory drug), two tablets Excedrin (an acetaminophen, aspirin, and caffeine drug), and one tablet Montelukast (an asthma medication). Dkt. No. 33, ¶¶8 & 10. Lockhart complained to CO Beilke that he received the wrong medication, and CO Beilke immediately reported the circumstances to Nurse Leberak. *Id.*, ¶¶ 7 & 43. At the time, Plaintiff did not report any physical symptoms or mental health complaints. *Id.*, ¶¶ 9 & 43.

Within 30 minutes of speaking to CO Beilke, Nurse Leberak called Dr. English two times for guidance on how to handle the situation. *Id.*, ¶¶7, 11, & 12; *see also* Dkt. No. 37-1 at 2. Nurse Leberak explains that the individual at the institution with the authority to determine if an inmate's prescription medication should be withheld and/or if there are any additional monitoring needs was the "on-call physician," Dr. English. Dkt. No. 33, ¶10. During the first call, Nurse Leberak reported to Dr. English that Lockhart had taken his own medication (Salsalate), in addition to the wrong medication (Ibuprofen, Excedrin, and Montelukast). *Id.*, ¶11. During the second call, Nurse Leberak clarified that Lockhart had not taken his own medication; he had only taken the wrong medication. *Id.*, ¶12.

Based on Dr. English's conversation with Nurse Leberak, Dr. English determined that it was not necessary for Lockhart to see a Provider in person. *Id.*, ¶21. Dr. English explains that Lockhart had not reported any adverse effects from taking the wrong medication; and Ibuprofen, Excedrin, and Montelukast are medications commonly given together without side effects. *Id.*, ¶¶15-21, 35-39. Dr. English also noted that Lockhart received the wrong medications at "normal" doses and he had no prior medical diagnoses or administered medications that were cause for concern with those normal doses. *Id*. And there was no medical intervention available to remove the medicine from Lockhart's body faster than it would have naturally cleared from his system. *Id.*, ¶21. Dr. English ordered, out of an abundance of caution, that Lockhart's next dose of Salsalate should be held because it was a similar drug class as Ibuprofen; and that Lockhart should

"self-monitor" and inform the Health Services Unit (HSU) if he experienced any problems. *Id.*, ¶22. Based on Dr. English's order, Nurse Leberak told CO Beilke to hold the next scheduled dose of Salsalate from Lockhart, that no third-party monitoring or testing was needed at that time, and that Lockhart should not have any issues with the medications he accidently took. *Id.*, ¶23.

Between 3:38 p.m. and 3:43 p.m., CO Beilke went to Lockhart's cell twice to talk about what Nurse Leberak's instructions. *Id.*, ¶44. According to Lockhart, he told CO Beilke at that time that he felt suicidal and that his stomach hurt. Dkt. No. 42, ¶¶18-21; *see also* Dkt. No.39 at 37:30–38:30. CO Beilke asked if he had plans to self-harm; and Lockhart responded, "No." Dkt. No. 42, ¶19. CO Beilke then gave Lockhart some crackers for his stomach, stated he would tell the nurse, then left. *Id*. There is no record of CO Beilke reporting Lockhart's suicidal ideation or stomach troubles to HSU nor is there any record of Lockhart filing a health services request in connection with any of the symptoms he complains he had that day. *See* Dkt. No. 37-1 & 40-1.

Later in the day, at some time *before* the 4:01 p.m. timestamped progress note, Nurse Leberak did a medication pass on Lockhart's unit. Dkt. No. 33, ¶25. Nurse Leberak did not know that Lockhart had allegedly reported suicidal ideation or stomach issues to CO Beilke. *Id.*, ¶30. Nurse Leberak saw and spoke to Lockhart at his cell. *Id*. Lockhart was standing up in his cell and his speech was clear. *Id.*, ¶26. Nurse Leberak did not see any signs that Lockhart was experiencing any adverse effects from the medication he had taken earlier in the day; and Lockhart did not report any physiological or psychological concerns to Nurse Leberak at the time. *Id*. Nurse Leberak told Lockhart that she called Dr. English, who determined that no further testing or monitoring was needed. *Id*.

According to Lockhart, during the dinner-time meal pass later that day, he stood on top of his sink, yelled "I told y'all I was feeling suicidal," then "jump[ed] backwards off the sink landing on his hip, side and back injuring hi[m]self." Dkt. No. 1, ¶¶34-35. Lockhart says he did this because Montelukast caused him to be suicidal and hallucinate. *Id*. Although Dr. English reports

3

that suicidal ideation and hallucinations are not commonly associated with Montelukast use. Dkt. No. 33, ¶37. She states that there is some preliminary research indicating a *possible* link between suicidal ideation and Montelukast, but the only two cases finding a link involved children who used the medicine long term. *Id*. Dr. English states that, in an adult, one single dose of Montelukast would not cause suicidal thoughts and hallucinations. *Id*.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party asserting that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

To survive summary judgment on an Eighth Amendment deliberate indifference claim, Lockhart must provide evidence from which a reasonable jury could conclude that the defendants:

4

(1) knew of an objectively serious medical condition; and (2) were deliberately indifferent towards that medical condition. *Petties v. Carter*, 836 F.3d 722 (7th Cir. 2016). The first, objective, element is satisfied by showing that Lockhart suffered from a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citing *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008)). The second, subjective, element is satisfied by showing that a prison official "knows of a substantial risk of harm to an inmate and 'either acts or fails to act in disregard of that risk.'" *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012)(quoting *Arnett v. Webster,* 658 F.3d 742, 751 (7th Cir. 2011)). This is a "high hurdle." *See Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). It requires "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Id*. (quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)). Lockhart must show that Defendants' medical decisions were "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)).

For purposes of summary judgment, the Court will assume that ingesting the wrong prescription medication was an objectively serious risk of harm, although it is far from clear that the medications that Lockhart mistakenly took—two over-the-counter pain medications, Ibuprofen and Excedrin, and a single dose of an asthma medication, Montelukast—created a serious risk of harm to him. Lockhart has introduced no competent medical testimony from which a reasonable jury could find that his ingestion of these materials presented a serious risk of objective harm. But the Court's rejection of his claim is primarily based on its conclusion that no reasonable jury could find that either Nurse Leberak or Dr. English were deliberately indifferent toward any risk to him from the medication error. With respect to Nurse Leberak, the record confirms that when she

5

found out about Lockhart's circumstances, she immediately reviewed his medical file, then called Dr. English for directions on how to proceed. Nurse Leberak explains that the individual at the institution with the authority to determine if an inmate's prescription medication should be withheld and/or if there are any additional monitoring needs is the "on-call physician" (not her), so she asked the appropriate individual for guidance. Dr. English told her to hold the next Salsalate dose, direct Lockhart to "self-monitor," and take no further action. Nurse Leberak then followed Dr. English's directions—and Lockhart does not dispute this. Dkt. No. 43, ¶¶22-23. A nurse is entitled to defer to a doctor on matters that are not within their training and expertise. *See Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010)("[A] medical care system requires nurses to defer to treating physicians' instructions and orders in most situations[.]"). Therefore, Nurse Leberak is entitled to summary judgment.

With respect to Dr. English, the record confirms that she used her medical judgment to guide her response to Nurse Leberak's report. She concluded it was medically prudent to hold off on administering Lockhart's next Salsalate dose, to direct Lockhart to "self-monitor," and for staff to otherwise take no further immediate action. Dr. English explains that Ibuprofen, Excedrin, and Montelukast are medications commonly given together without side effects, and Lockhart reported no side effects, so there was no need to test, monitor, or further evaluate Lockhart in person that day. She explains that no medical interventions were available to remove the medicine from Lockhart's body faster than it would have naturally cleared from his system anyway, so self-monitoring coupled with holding the next Salsalate dose, was the best course of action. And she notes that two of the three medications—Ibuprofen and Excedrin—are over-the-counter medications that could have safely been taken in higher doses than what Lockhart took. These undisputed facts demonstrate that Dr. English used her medical judgment to treat Lockhart that day and Lockhart's disagreement with Dr. English's medical judgment—his assertion that he should have been closely monitored and tested—does not support a deliberate indifference claim.

*See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Therefore, Dr. English is entitled to summary judgment as well.

Lockhart attempts to create a dispute of fact by claiming that Nurse Leberak never went to his cell that day to check on him. Dkt. No. 41, ¶22. Contemporaneously created medical records suggest otherwise. *See* Dkt. No. 37-1 at 2. Additionally, even if Lockhart's statements were true, he still does not have sufficient evidence to support a deliberate indifference claim. Dr. English did not order that any additional examination, testing, or monitoring was required; therefore, Nurse Leberak was not required to check on him in his cell at all that day. If Nurse Leberak did go to his cell to check on him (as she claims she did), she would have been doing *more* than was ordered by Dr. English. But her alleged *failure* to go to his cell to check on him does not establish deliberate indifference.

Lockhart also attempts to assert that Nurse Leberak and Dr. English were deliberately indifferent for their failure to consider the fact that Montelukast allegedly causes suicidal ideation and caused him to jump backwards off the sink and land on his hip, side, and back. Dkt. No. 41, ¶¶24-25. But Dr. English explains that one single dose of Montelukast does not cause suicidal ideation or hallucinations in an adult. And, unlike Dr. English, Lockhart is not a medical expert qualified to dispute this assertion. *See e.g. Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001)("Wholly lacking in medical knowledge as he was, the plaintiff [a prisoner] was incompetent to testify on the causal relation between exercise and healthy gums."). Additionally, there is no evidence that either Nurse Leberek or Dr. English had any reason to be concerned that Lockhart might be suicidal. The record shows that, to the extent Lockhart reported suicidal ideation to CO Beilke later in the day as he claims, neither Nurse Leberek nor Dr. English were aware of that report. CO Beilke never indicated any interaction with Lockhart concerning his suicidal ideation to the HSU. Accordingly, neither defendant could have been aware of the issue and neither could

have been deliberately indifferent in failing to take action in response. Indeed, Lockhart also did not report any such symptoms or injuries to HSU. *See* Dkt. No. 40-1. Nurse Leberak and Dr. English could not have been deliberately indifferent towards a condition they were not aware of. *See Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 614 (7th Cir. 2022). Because no reasonable jury could find in Lockhart's favor, the Court will grant the motion for summary judgment and will dismiss the case.

## MOTION FOR SANCTIONS AND MOTION TO STRIKE

On September 12, 2024, Lockhart filed a motion for sanctions and a motion to strike. Dkt. No. 46. He claims that Defendants did not provide "any evidence" to corroborate the "false claim" that Nurse Leberak spoke to him at cell front. *Id*. Contrary to his assertion, Nurse Leberak provided her own sworn declaration, *see* Dkt. No. 35, ¶¶15 & 16, which is admissible evidence. Defendants did not need to provide any other "corroborating" evidence to support the assertion. Lockhart's contemporaneously created medical records also state, "PIOC up in cell per usual," suggesting an in-person assessment did occur. To the extent Lockhart believes that Nurse Leberak lied in her declaration, he was free to challenge the veracity of her statement using his own sworn statement, which he did. *See* Dkt. No. 41, ¶22. But striking the entire declaration is not the proper course of action. *See* Civ. L. R. 56(b)(1)("Collateral motions, such as motions to strike, are disfavored."). Separately, and as explained above, whether or not Nurse Leberak spoke to him at cell front does not affect the outcome of this case anyway. Dr. English ordered that no in-person examination was required. Therefore, Nurse Leberak would not have been deliberately indifferent by failing to go to his cell. Because Lockhart has not established any basis for imposing sanctions or striking Nurse Leberak's declaration from the record, the Court will deny the motion for sanctions and to strike.

# CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 31) is **GRANTED**; and this case is **DISMISSED**. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that Lockhart's motion for sanctions and motion to strike (Dkt. No. 46) are **DENIED**.

Dated at Milwaukee, Wisconsin on February 26, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.